CONSOLIDATED APPEAL NOS. 14-4229 and 14-4180

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

TIMOTHY WILLIAMS and DERRICK WELLS,

Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CONSOLIDATED BRIEF OF APPELLANTS WILLIAMS AND WELLS

NICHOLAS J. COMPTON, ESQ.

ASSISTANT FEDERAL PUBLIC DEFENDER

SHAWN McDERMOTT

MILLS McDERMOTT, PLLC

Counsel for Appellants Timothy Williams and Derrick Wells

1

APPEAL NO. 14-4229 and 14-4180

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

TIMOTHY WILLIAMS and DERRICK WELLS,

Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CONSOLIDATED BRIEF OF APPELLANTS WILLIAMS AND WELLS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................4

STATEMENT OF JURISDICTION..........................................................6

ISSUES PRESENTED FOR REVIEW .....................................................7

   A.  PREFACE.........................................................................................7

   B.  WILLIAMS' ISSUE........................................................................8

   C.  WELLS' ISSUES ............................................................................8

STATEMENT OF THE CASE...................................................................8

SUMMARY OF THE ARGUMENT .......................................................15

ARGUMENT .............................................................................................16

     I. THE DISTRICT COURT MAY HAVE ABUSED ITS DISCRETION WHEN IT SENTENCED WILLIAMS TO A SENTENCE THAT "IS TO BE SERVED CONSECUTIVE TO ANY FUTURE STATE SENTENCE THAT MAY BE IMPOSED," RATHER THAN TO AN *ANTICIPATED* FUTURE STATE SENTENCE.

     II. WELLS' PLEA AGREEMENT AND U.S.S.G. § 1B1.8 OF THE SENTENCING GUIDELINES WERE VIOLATED WHEN THE GOVERNMENT USED AND THE DISTRICT COURT RELIED UPON INFORMATION GLEANED FROM WELLS' IMMUNIZED DEBRIEFING WITH THE GOVERNMENT IN CALCULATING THE ADVISORY GUIDELINES RANGE.

     III. THE DISTRICT COURT ERRED IN CALCULATING WELLS' ADVISORY GUIDELINES RANGE.

CONCLUSION .........................................................................................38

REQUEST FOR ORAL ARUMENT .......................................................38

**TABLE OF AUTHORITIES**

**CASES**

Anders v. California, 386 U.S. 738 (1967)…………………………………………7, 38

Paradiso v. United States, 689 F.2d 28 (2nd Cir. 1982), cert. denied, 459 U.S. 1116 (1983)………………………………………………………………………………..22

Setser v. United States, 132 S.Ct. 1463 (2012)…………………………….…17

United States v. Baird, 218 F.3d 221 (3rd Cir. 2000)……………………….…20

United States v. Blake, 81 F.3d 498 (4th Cir. 1996)………………………20, 28

United States v. Dunlap, 209 F.3d 472 (6th Cir. 2000)……………………………35

United States v. Garcia, 86 F.3d 394 (5th Cir. 1996)……………………..…32

United States v. Hall, 46 F.3d 62 (11 Cir. 1995)………………………………35

United States v. Lopez, 219 F.3d 343 (4th Cir. 2000)…………………….…20, 21, 25

United States v. Love, 134 F.3d 595 (4th Cir. 1998)……………………..………29

United States v. Manigan, 592 F.3d 621 (4th Cir. 2010)…………………………35

United States v. Moscahlaidis, 868 F.2d 1357 (3rd Cir. 1998)……………………22

United States v. Powell, 650 F.3d 399 (4th Cir. 2011)……………………………29

United States v. Shorteeth, 887 F.32d 253 (10th Cir. 1989)………………………22

United States v. Singh, 54 F.3d 1182 (4th Cir. 1995)……………………………28

United States v. Smith, 472 F.3d 222 (4th Cir. 2006)……………………………17

United States v. Washington, 146 F.3d 219 (4th Cir. 1998)…………………..20, 23

**STATUTES AND GUIDELINES**

18 U.S.C. §1291……………………………………………………………………6

18 U.S.C. § 3231…………………………………………………………………...6

U.S.S.G. § 1B1.8………………………………………..………….....*passim*

U.S.S.G. § 2D1.1……………………………………………………………16, 28, 35

U.S.S.G. § 6A1.3…………………………………………………………………29

## STATEMENT OF JURISDICTION

On January 28, 2012, a grand jury sitting in the Northern District of West Virginia returned a seven-count Indictment, charging Timothy Rameek Williams ("Williams") and Derrick Wayne Wells, Jr., ("Wells"), with a conspiracy to possess with intent to distribute and to distribute 28 grams or more of cocaine base or "crack,"  two counts of aiding and abetting the maintenance of a drug-involved premises, in violation of  18 U.S.C. § 2, 21 U.S.C. §§ 812(c), 841(a), 841(b)(1)(B), 846, and 856(a)(1).  J.A.  27-35.

Williams was solely charged with possession of a firearm in furtherance of a drug trafficking crime and possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), and 924(c)(1)(A).   J.A. 31-33.   Williams and a third co-defendant, Ashley Marie Seal, were charged with aiding and abetting in the distribution of crack, in violation of 18U.S.C. § 2, 21 U.S.C. §§ 812(c), 841(a)(1), and 841(b)(1)(C).   J.A. 34.  Additionally, Wells was solely charged with a count of possession with intent to distribute crack, in violation of 21 U.S.C. §§ 841(a) (1) and 841(b)1)(C).  J.A. 30.  Because these charges constitute offenses against the United States, the District Court had original jurisdiction pursuant to 18 U.S.C. § 3231.

This is an appeal from the final judgment and sentence imposed after Williams pleaded guilty on November 12, 2013, to Count 1 of the Indictment,

conspiracy to possess with intent to distribute and to distribute 28 grams or more of crack; and after Wells pleaded guilty to Count 3, possession with intent to distribute cocaine base, on February 20, 2014.   J.A. 46-50.   The District Court entered a judgment order against Williams on March 10, 2014, and against Wells on February 24, 2014.  J.A. 56-62.   Williams and Wells filed timely notices of appeal on March 17, 2014 and March 5, 2014, respectively.  The United States Court of Appeals for the Fourth Circuit has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

### A. Preface

After carefully examining the record and researching the relevant law for any violation of the United States Constitution, applicable federal statutes, the Federal Rules of Criminal Procedure, and the United States Sentencing Guidelines, counsel for Williams has concluded that there appears to be no meritorious grounds for appeal for Williams.  In addition, Williams' plea agreement contains an appellate waiver provision.  Thus, counsel for Williams submits his portion of this brief in accordance with <u>Anders v. California</u>, 386 U.S. 738 (1967).

### B.  Williams' Issue

The Appellate Court may wish to review whether the District Court may have abused its discretion when it sentenced Williams to a sentence that "is to be served consecutive to *any* future state sentence that may be imposed," rather than an *anticipated* future state sentence (emphasis added).

### C. Wells' Issues

Whether the district court erred in calculating the appropriate guideline range, where the district court relied upon information from Wells' debriefing, protected by U.S.S.G. § 1B1.8, and where the district court relied upon [an unreliable hearsay] statement of a witness?

Whether the district court erred in calculating the appropriate guideline range, where the district court relied upon information from Wells' debriefing, protected by U.S.S.G. § 1B1.8, and where the district court relied upon an out-of-court statement of a witness?

## STATEMENT OF THE CASE

On September 4, 2013, a grand jury sitting in the Northern District of West Virginia at Martinsburg returned an Indictment, alleging Williams' and Wells' participation in a drug conspiracy.  J.A. 27-35.

Earlier, on April 11, 2013, Martinsburg Police pulled over a 2006 Buick, registered to Williams, at the corner of Race and Raleigh Streets in Martinsburg. J.A. 355.  The ostensible basis for the traffic stop was an "obstructed license plate," or the tinted cover on the license plate. J.A. 355.  Wells was alone in the vehicle at the time of the stop.  J.A. 355.  The police officer that performed the traffic stop reportedly sensed an odor of marijuana emanating from Wells during their conversation; upon the arrival of back-up, the officer asked Wells to exit the vehicle for a pat-down search.  J.A. 355.  During this search, police discovered a lump in Wells' crotch, which Wells reportedly described as "just marijuana."  J.A. 355.  The police arrested Wells and took him to the police station; a search at the police station revealed individually wrapped bags of crack and marijuana.  J.A. 355.

On May 10, 2013, Martinsburg Police Officers responded to an apartment at 409 West Race Street, which had been rented to Williams and Wells, to assist a stabbing victim.  J.A. 356.  The police followed a blood trail to Apartment 12 at that street address.  J.A. 356.  After no one responded to the police officers' knock and announce at the apartment, the police forced an entry.  J.A. 356.  Inside, police officers found more blood and three people:  Darnell Plaines, Nilazia McFarlan, and Allison Paxton.  J.A. 356.  The police conducted a protective sweep of the apartment, in order to locate the victim; they discovered baggies, packaged pills, a

9

firearm, magazine, and parts of an assault weapon. J.A. 356-357. The three people reportedly denied knowing the source of the "bloody trail," but then advised the police that Williams had shown up bleeding, asking for someone to call 911 because he had been stabbed. J.A. 357. Derrick Wells was not present at the apartment when the search was conducted.

The officers obtained a search warrant for the apartment, based on their protective sweep discoveries; also, they went to the hospital to speak with Williams, who was then being prepped for surgery. J.A. 356. Williams reportedly told police that he allowed a white male into the lobby of his building, and that man stabbed him. J.A. 356. Back at the apartment, police seized approximately 100 grams of crack, assault weapon magazines and other assault weapon parts, approximately $3500 cash, Williams' and Wells' West Virginia Driver's Licenses, as well as Williams' rental agreement and keys to a storage unit on the Williamsport Pike. J.A. 357.

The police obtained a search warrant for the storage unit. J.A. 357. The unit contained ammunition, two firearms, and a list of phone numbers written on papers in a sandwich bag. J.A. 357. Despite the wealth of historical information detailed in the co-defendants' Presentence Reports, the conduct included herein formed the bases of the Indictment returned in this case.

On September 14, 2013, Wells was arrested on federal charges and was ordered to be detained by the United States Magistrate Court. J.A. 401.

Williams timely notified the government of his intentions to plead guilty to Count 1, and on November 12, 2013, Williams pled guilty to Count 1 of the Indictment, before the Honorable James E. Seibert, United States Magistrate Judge; the remaining counts against Williams were dismissed. J.A. 247. Williams waived the right to appeal his sentence, provided his base offense level reached no greater than a level 30. J.A. 46-50. Wells also pleaded guilty on November 12, 2013, to Count 3 (Possession with Intent to Distribute crack) of the Indictment, before Judge Seibert. J.A. 56.

Wells entered a guilty plea, pursuant to plea agreement, on November 12, 2013, to Count 3 of the Indictment, charging him with possession with intent to distribute crack. J.A. 36-40. Pursuant to the agreement, Wells agreed to litigate at sentencing the relevant conduct applicable to his case, with a stipulation that the drug relevant conduct be between a base offense level 22 and 28. The parties further agreed to litigate whether a two-level enhancement for possession of firearms applied, and whether a two-level enhancement for maintenance of a premises for the purpose of crack distribution applied. The plea agreement also contained a provision that no information that the government learned in Wells' debriefing would be used against him as the basis for a subsequent prosecution or

in determining his applicable guidelines range.  J.A. 36-40.  Finally, the plea
agreement contained a provision whereby Wells agreed to waive the right to appeal
any sentence imposed with an offense level of 28 or less.  J.A. 36-40.

Prior to sentencing, Wells, with counsel, met with Sgt. Zollinger for a
debriefing at the Eastern Regional Jail, providing a memorialized accounting of his
own criminal conduct, as well as the conduct of Williams.  Similarly, Williams
provided a debriefing to police as well.

Following a presentence investigation, the United States Probation officer
determined that the drug relevant conduct applicable to Wells was 101.77 grams of
crack, and that Wells should receive enhancements for the possession of firearms
and maintenance of premises for the purpose of distribution of drugs.  J.A. 417-
420.  Wells filed timely objections to the probation officer's findings; the
government filed objections, suggesting that the appropriate drug relevant conduct
should have been 116.4 grams of crack.  J.A. 434, 440-441.

Wells' sentencing occurred first, with Part 1 on February 4, 2014.  J.A. 91-
130.  Williams testified at Wells' sentencing, and counsel for Wells objected to the
line of questioning wherein the government inquired during Williams' direct
examination, whether Williams knew that Wells gave police a statement that Wells
got 2.17 grams of cocaine (found in Williams' vehicle) from Williams, that Wells

told police that Williams fronted the drugs to Wells. J.A. 102. This information came out at Wells' debriefing. J.A. 102. Williams stated that he was not aware that Wells gave police this information. J.A. 102. The government also questioned Williams about a trip he took with Wells to a shooting range. J.A. 104. This information was only known to the government as a result of Wells' debriefing. J.A. 104. The government also introduced the hearsay testimony of Allison Paxton through its witness, Sgt. Zollinger. Paxton indicated that Wells had been at the Race Street apartment during the night of the police search when police seized nearly 100 grams of crack and a firearm.

The second portion of Wells' sentencing occurred on February 20, 2014. J.A. 131-246. Counsel reiterated Wells' objection to the use of the information from Wells' debriefing in calculating the appropriate guidelines range. The government contended that it only used the information from the debriefing to impeach Williams, and that this was a proper use of such information. The district court appeared stuck on the fact that Wells admitted in his debriefing that he had been given crack by Williams and it questioned counsel for Wells repeatedly on this issue. The district court queried, "Well, my question is, where did he get the crack cocaine?" At this point, the government tried to distance itself from the debriefing that had been entered into evidence, arguing

> And with regard to the Court's question about where he got the cocaine base that was in the car, Mr. Wells debriefed he got from Mr. Williams. But we are not asking the Court to rely upon that because that would be an improper reliance upon a debriefing. Again, the debriefing was just based upon letting him know where he said he got it so that maybe he would tell the truth about him [Williams].

J.A. 207.

After hearing argument and taking in the evidence, the district court ruled that the nearly 100 grams of crack found in the apartment was attributable to Wells and found Wells' total drug relevant conduct to be 116.4 grams of crack. J.A. 214. The district court further ruled that the enhancement for possession of a firearm applied, that the enhancement for maintenance of premises for drug distribution applied, that the safety valve provision did not apply, and that an adjustment for minor role did not apply. J.A. 222. Wells' resulting guideline range was determined to be 87-108 months. J.A. 228. The district court imposed a sentence of eighty-seven (87) months of incarceration. On March 5, 2014, Wells filed his notice of appeal.

Williams' sentencing occurred on March 6, 2014, before the Honorable Gina M. Groh, United States District Court Judge. J.A. 321-348. At sentencing, the government discussed how it withdrew Williams' two-level reduction for acceptance of responsibility, as it considered his debriefing and his testimony at Wells' sentencing to have been less than truthful. J.A. 326. Williams received a

sentence at the top of his guidelines range, 188 months of incarceration, to be followed by five years of supervised release. J.A. 340. On March 10, 2014, the district court entered its judgment order and on March 17, 2014, Williams timely filed his notice of appeal.

## SUMMARY OF THE ARGUMENT

While Counsel for Williams' believes there are no non-frivolous issues to raise in this appeal, the Appellate Court may wish to consider one matter. The district court imposed Williams' sentence "consecutive to any future state sentence that may be imposed." While the district court has discretion to impose a sentence consecutive to an anticipated future state sentence that has not yet been imposed, the district court imposed Williams' sentence consecutive to *any* future state sentence, potentially in an abuse of the district court's discretion. Counsel for Williams requests that this Court review the record and consider whether a procedural error may have occurred when the district court imposed Williams' sentence "consecutive to any future state sentence that may be imposed," rather than consecutive to an anticipated future state sentence.

Counsel for Wells believes the district court committed reversible error in his case. First, Wells argues that the government violated Paragraph 6 of the plea agreement it entered with Wells and § 1B1.8 of the United States Sentencing

Guidelines when it entered into evidence, through its own witness (i.e. Williams), information gleaned from Wells' debriefing with Sgt. Matthew Zollinger. Specifically, the government entered into evidence that Wells had admitted that Williams had provided him with 2.17 grams of crack found on Wells' person, and that Wells and Williams traveled to a shooting range together. Wells argues that the use of such information, in contravention of the plea agreement, voided the appellate waiver provision of the plea agreement.

Wells further argues that the district court committed error when it relied upon information contained in Wells' immunized debriefing in determining the drug weight attributable to Wells and that the two-level firearm enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), applied to Wells. Wells suggests that the use of this immunized information by the government and reliance upon such information by the district court necessitates that his sentence be vacated and the case remanded for re-sentencing.

## ARGUMENT

I.    THE DISTRICT COURT MAY HAVE ABUSED ITS DISCRETION WHEN IT SENTENCED WILLIAMS TO A SENTENCE THAT "IS TO BE SERVED CONSECUTIVE TO *ANY* FUTURE STATE SENTENCE THAT MAY BE IMPOSED," RATHER THAN TO AN *ANTICIPATED* FUTURE STATE SENTENCE.

16

### A. Standard of Review

The reasonableness standard applied in reviewing federal sentences asks whether the district court abused its discretion. <u>Setser v. United States</u>, 132 S.Ct. 1463 (2012).

### B. Discussion

In <u>Setser</u>, the Supreme Court partially overruled the holding of <u>United States v. Smith</u>, 472 F.3d 222, 226 (4th Cir. 2006), which was that a federal court had no authority to order that its sentence run consecutive to, or concurrently with, an anticipated future sentence. 132 S.Ct. 1463, 1470 (2012). However, the Supreme Court did not address in <u>Setser</u> whether district courts have the discretion to impose sentences consecutive to *any* future state sentence; rather, it limited its holding to sentences involving *anticipated* future state sentences. The holding in <u>Setser</u> is this:

> (1) a district court has the discretion to order that a federal sentence run consecutively to an anticipated state sentence that has not yet been imposed, and
>
> (2) district court's decision to require a defendant to serve sentence consecutive to one anticipated state sentence and concurrent with another anticipated state sentence was not rendered unreasonable when state court decided to impose its two sentences concurrently.

132 S.Ct. 1463.

The Fourth Circuit discusses the impact of the Supreme Court's ruling in Setser thusly, "[t]he Fourth Circuit's holding in Smith was overruled in 2012 by the Supreme Court of the United States, which held that district courts do have discretionary authority 'to order that [a defendant's] sentence run consecutively to his anticipated state sentence' in an unrelated proceeding..." Redding v. United States, Slip Copy, 2014 WL 1572797 (S.D.W.Va. March 21, 2014).    It does not appear that Setser entirely overruled the holding of Smith, especially in a situation where a district court imposes a sentence consecutive to any future state sentence, when no other sentences are yet in existence or anticipated.

Here, the district court imposed a sentence that "is to be served consecutive to any future state sentence that may be imposed," rather than imposing a sentence consecutive to an anticipated future state sentence.  Williams does have pending state charges in a related state criminal action arising from the same series of events from which his federal charges arose.  It appears likely that Williams' state charges will come to a resolution in the future.  Similarly, it appears likely that these pending charges were what the district court alluded to at Williams' sentencing, but the district court's use of the term "any" as opposed to the "anticipated" future state sentence clouds the issue.

18

Williams respectfully requests that this Court review this issue and consider whether the district court abused its discretion in imposing a sentence consecutive to any un-anticipated future sentence.

II.    WELLS' PLEA AGREEMENT AND U.S.S.G. § 1B1.8 OF THE SENTENCING GUIDELINES WERE VIOLATED WHEN THE GOVERNMENT USED AND THE DISTRICT COURT RELIED UPON INFORMATION GLEANED FROM WELLS' IMMUNIZED DEBRIEFING WITH THE GOVERNMENT IN CALCULATING THE ADVISORY GUIDELINES RANGE.

As the first assignment of error, Wells avers that the district court violated the terms of his plea agreement and Section 1B1.8 of the United States Sentencing Guidelines, by relying upon information contained in Wells' debriefing with the Government in calculating the appropriate guideline range as well as in imposing the appropriate sentence.  Wells suggests that reliance on such information, protected by his plea agreement and U.S.S.G. § 1B1.8, invalidated the appeal waiver of his plea agreement.  Wells would respectfully request this Court to remand this case for a re-sentencing hearing, where information contained in the debriefing would not be used in determining the appropriate guideline range and sentence.

A. THE DISTRICT COURT VIOLATED WELLS' EXPLICIT RIGHT UNDER U.S.S.G § 1B1.8 AND PARAGRAPH 6 OF HIS PLEA AGREEMENT THAT INFORMATION DIVULGED IN HIS DEBRIEFING WOULD NOT BE USED IN DETERMINING HIS APPROPRIATE GUIDELINE RANGE.

19

U.S.S.G. § 1B1.8(a) provides,

> (a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

Wells and the government agreed in a written plea agreement that information that the government learned during Wells' debriefing would not be used to calculate his applicable guideline ranges, pursuant to Section 1B1.8.  J.A. 36-40.

A contention that a sentencing court's consideration of a "proffer statement during sentencing violated the terms of the proffer agreement... raises a question of law that [an appellate court] review[s] de novo."  United States v. Lopez, 219 F.3d 343, 346 (4th Cir. 2000) (citing United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996)).

The Fourth Circuit, as well as every other circuit that has considered the issue, has held that use of information contained in a debriefing, where such information is protected by U.S.S.G. § 1B1.8, to determine the appropriate guideline range, is error and requires vacating of a defendant's sentence.  *See* United States v. Lopez, 219 F.3d 343 (4th Cir. 2000); United States v. Washington, 146 F.3d 219 (4th Cir. 1998); United States v. Baird, 218 F.3d 221 (3d Cir. 2000);

United States v. Shorteeth, 887 F.2d 253 (10th Cir. 1989).

In Lopez, the Fourth Circuit vacated a defendant's sentence and remanded to the district court where the district court relied on a defendant's proffer statement in calculating the relevant conduct attributable to that defendant.  Lopez, 291 F.3d at 346-49.  The Court explained, "Cases upholding the use of proffer statements during sentencing involve proffer agreements that explicitly allowed the government to use the information during sentencing under certain conditions precedent."  Lopez, 291 F.3d at 346.   "The proffer agreement here expressly provides that any self-incriminating information would 'not be used in determining the applicable sentencing guideline range should [Lopez] be convicted.'"  Id.  "We reject the government's argument and find that the use of the information in Lopez's proffer statement, provided to the district court through the testimony of Special Agent Russell at Lopez's sentencing hearing, clearly violated the terms of the proffer agreement."  Id. at 347.

> In sum, no condition precedent to the use of the proffered information by the government was satisfied in this case. In light of this fact, as well as the government's explicit promise in the agreement that any self-incriminating information provided by Lopez would "not be used in determining the applicable sentencing guideline range should [Lopez] be convicted," we find that the district court erred in permitting the government at the sentencing hearing to use the information in the proffer statement to establish the drug quantity attributable to Lopez.

Id.

The Tenth Circuit has held, "Failure to properly object to breach of a plea agreement at a sentencing hearing ordinarily does not waive the objection." Shorteeth, 887 F.2d at 255 (citing United States v. Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989) and Paradiso v. United States, 689 F.2d 28, 30 (2d Cir. 1982), cert. denied, 459 U.S. 1116 (1983)). "A Guidelines § 1B1.8 objection is closely analogous." Shorteeth, 887 F.2d at 255. "Guidelines § 1B1.8(a) affirmatively prohibits the sentencing court from considering certain information...." Id. at 256. "[W]e believe the language and spirit of Guidelines § 1B1.8 require the agreement to specifically mention the court's ability to consider defendant's disclosures during debriefing in calculating the appropriate sentencing range before the court may do so." Id. at 257.

> One of § 1B1.8's most important advantages is that federal prosecutors can now assure potential informants that their statements will in no way be used against them. This advantage will be undercut if we allow ambush by broadly worded disclaimers. Government prosecutors are more likely to be aware of § 1B1.8's language than some defense lawyers, and prosecutors who want to have the court consider incriminating information revealed by defendants under cooperation agreements can bargain for such a provision. The full disclosure approach we require here will ensure defendants are not unfairly surprised by sentencing determinations and will allow both the defendant and the government to bargain with full information.

Id.

The Third Circuit has agreed that a limitation provision on the use of information in a debriefing is enforceable. "Reading section 3661 together with the other provisions of the Sentencing Reform Act, including the requirements specifically articulated by Congress, leads us to conclude that U.S.S.G. § 1B1.8, while limiting the otherwise-comprehensive language of section 3661, is enforceable." Baird, 218 F.3d at 227. "Courts have set aside sentences based on incriminating information obtained from a defendant where there were explicit references to section 1B1.8 in the plea or cooperation agreements." Id. at 228 (citing Washington, 146 F.3d at 220).

In Washington, the defendant "appeal[ed] his sentence, arguing that the district court impermissibly relied on his statements to a probation officer that were immunized under his plea agreement with the government." Washington, 146 F.3d at 220. The Fourth Circuit "agree[d] with Washington and remand[ed] his case for further sentencing proceedings." Id. In Washington, the defendant had a cooperation agreement paragraph in his plea agreement that was almost verbatim of the agreement contained in this case.

> In his plea agreement, Washington promised to "be completely forthright and truthful with federal officials ... with regard to all inquiries made of him." In return, the government agreed "that any information obtained from Mr. Washington in compliance with this cooperation agreement will be made known to the sentencing Court; however, pursuant to Guideline 1B1.8, such information may not be used by the Court in determining Mr. Washington's

applicable guideline range."

Id.  During sentencing, Washington's attorney argued that he should receive a reduction for a minimal role in the drug conspiracy, pursuant to U.S.S.G. § 3B1.2. Id.  The district court denied providing Washington with such a reduction, relying upon the testimony of Washington's probation officer that Washington had told him that the stipulated relevant conduct in his plea agreement "underestimated the amount of drugs he actually had distributed."  Id.  The district court reasoned,

> "[I]f you are seeking a reduction in role for your client, based on his role in the total conspiracy, what he told the probation officer about that is certainly important for me to know."...
>
> "Mr. Washington had this follow-up conversation with Mr. Sneberger, and I'm aware of what was said. Based on what was said, I cannot ignore it and grant your defendant a two-level reduction for a minor role."

Id.

The Fourth Circuit, in vacating the sentence, reasoned,

> The plea agreement Washington entered into with the government imposed upon him a duty to be completely truthful with respect to all inquiries made by federal officials. The government in return guaranteed Washington that any information obtained from him pursuant to such cooperation, in accordance with U.S.S.G. § 1B1.8, would "not be used by the Court in determining [his] applicable guideline range." Section 1B1.8(a) similarly provides that when "the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable

guideline range." And the commentary further clarifies that "where the defendant, subsequent to having entered into a cooperation agreement, provides such information to the probation officer preparing the presentence report, the use of such information remains protected by this section."

Id. at 221. "We think these statements by the district court lead ineluctably to the conclusion that it improperly relied on the protected statements made by Washington in determining his offense level and, thus, his guideline range." Id. at 222.

> The district court's reliance on comments Washington made to Sneberger after the execution of the plea agreement constituted a similar breach of Washington's agreement, and is specifically forbidden by U.S.S.G. § 1B1.8. We therefore vacate Washington's sentence and remand for resentencing to allow the district court to determine, without the assistance of Washington's statements to Sneberger, whether Washington deserves a role reduction pursuant to section 3B1.2.

Id.

Here, as in Washington and Lopez, there can be no doubt that Defendant had entered into a cooperation agreement with the government, in paragraph 6 of the plea agreement, where the parties explicitly agreed that information gleaned from the Defendant's debriefing would not be used in calculating the appropriate guideline range, pursuant to U.S.S.G. § 1B1.8. J.A. 36-40.

Moreover, there is no doubt that the government used information learned in

25

the debriefing to argue for their relevant conduct determination as well as the applicability of the guideline enhancements and that the district court specifically relied upon information from the debriefing in determining that the firearm enhancement was applicable and that the 91.6 grams of crack cocaine found in the upstairs bedroom should be attributable to Wells.

First, during the direct examination of Timothy Williams, the government used Wells' debriefing to ask Williams questions, including asking whether Williams was aware that Wells had said during the debriefing that Williams had fronted him the approximately 2 grams of crack found on Wells during the traffic stop.  J.A. 102-103.   The government also asked questions to Williams about his trip to a firing range with Wells, which was again information that the Government only knew due to the debriefing of Wells.  J.A. 104-105.   Counsel objected to the use of information from Wells' debriefing, but the district court overruled the objection.  J.A. 102.

Second, the district court relied upon this information garnered from the debriefing and presented by the government as justification for the relevant conduct determination, the firearm enhancement, and the enhancement for maintenance of a residence for distribution of drugs.  The district court, through questioning of counsel, found it relevant that Wells had admitted that Williams had fronted him crack cocaine.  Moreover, the district court held in upholding the

firearm enhancement, "[a]nd there's also the trip to the shooting range which the Court cannot overlook." J.A. 212. Despite the government arguing that it was merely using Wells' debriefing to impeach its own witness, Williams, which is questionable use of such information,[1] it is clear beyond peradventure that this information contained in the debriefing was part of the information relied upon by the Court in calculating Wells' relevant conduct and determining that the guideline enhancements applied.

Therefore, the use of this information by the government and reliance upon this information by the district court in calculating Wells' appropriate guideline range, violated the provisions of Section 1B1.8 and Wells' plea agreement with the government. Thus, this Court should vacate his sentence and remand for further sentencing proceedings.

III.    THE DISTRICT COURT ERRED IN CALCULATING WELLS' ADVISORY GUIDELINES RANGE.

As the second assignment of error, Wells argues that the district court erred in calculating the advisory guideline range as being between 87 and 108 months based upon a total offense level of 29 and a criminal history category I. Wells

---

[1] The government's argument might have been persuasive if the use of the information was used to impeach the testimony of Wells. However, using the debriefing information to impeach its own witness, in order to argue for a longer guideline sentence for Wells, is clearly improper use of the information learned in the debriefing.

suggests that the district court erred in attributing the 99.6 grams of crack-cocaine

found at the Race Street apartment to him, erred in finding that the firearm

enhancement applied, pursuant to U.S.S.G. § 2D1.1(b)(1), erred in finding that the

enhancement for maintenance of a premises for distribution of a controlled

substance, pursuant to U.S.S.G. § 2D1.1(b)(12), and erred in finding that Wells did

not qualify for a reduction in offense level for his role in the offense and under the

safety valve provision. Wells suggests that the district court, first, should not have

been permitted to calculate his guideline range based upon information discovered

in his debriefing with the government, which was protected by U.S.S.G. § 1B1.8,

and second, impermissibly relied upon the out-of-court statement of a witness,

Allison Paxton, in determining the appropriate guideline range.

"[I]n reviewing the application of the guidelines by a district court, we

examine factual determinations for clear error; legal questions, however, are

subject to a de novo standard of review." Blake, 81 F.3d at 503 (citing United

States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995)).

A.    THE DISTRICT COURT ERRED IN ADMITTING THE
      HEARSAY STATEMENT OF ALLISON PAXTON.

First, Wells argues that the district court erred in admitting the hearsay

statement of Allison Paxton into evidence because such statement did not have

28

sufficient indicia of reliability to support its probable accuracy.

Section 6A1.3 of the United States Sentencing Guidelines provides, *inter alia*, "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).  "Unreliable allegations shall not be considered."  U.S.S.G. § 6A1.3, cmt.  "The range of information that may be considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined."  U.S.S.G. § 1B1.3, background.  "[A] trial court may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain." United States v. Love, 134 F.3d 595, 607 (4th Cir. 1998).  "Although the Confrontation Clause does not apply at... sentencing, that does not mean [a sentencing hearing] lacks all evidentiary protections. Due process requires that sentencing courts rely only on evidence with some minimal level of reliability, and the Guidelines themselves demand that the evidence used have 'sufficient indicia of reliability to support its probable accuracy[.]'" United States v. Powell, 650 F.3d 388, 393-94 (4th Cir. 2011) (quoting U.S.S.G. § 6A1.3(a)).

Here, Wells asserts that the hearsay statement of Allison Paxton did not have a sufficient indicia of reliability to support its probable accuracy.  In this case,

investigating officers had interviewed two individuals who were found to be present at the Race Street apartment when the search was conducted which found the 99.6 grams of crack cocaine and the firearm– Allison Paxton and Nilazia McFarlan. Sentencing Tr., Vol. I, pp. 23-25. Both females were arrested on state court felony charges based on the contraband found at the residence, and both females debriefed with investigating officers while being held at the local jail. Id. Ms. Paxton's statement is the only evidence that placed Wells at the apartment on the night of the search. She claimed that she saw Wells go into "his" downstairs bedroom after police were called to the residence and never saw him again that evening. Id. Conveniently, the government ignored the statement of Nilazia McFarlan, who was present on the night of the search and told investigating officers that Mr. Wells was not present.[2] Id. However, Wells entered the statement of Ms. McFarlan into evidence through cross-examination of Sgt. Zollinger to show the unreliability of Ms. Paxton's statement. Id. Wells suggests that the district court should not have relied upon Ms. Paxton's statement because there was no way for the district court to determine which statement of the eyewitnesses were true and credible– Ms. Paxton's or Ms. McFarlan's. The only way to make a sufficient credibility determination would have been to have the

---

[2] At sentencing, the government argued that she never specifically said that Wells was not present, but instead only did not mention his name when asked who was present that evening. Sentencing Tr., Vol. I, pp. 34-35. Either way, Ms. McFarlan's statement of the persons present contradicts Ms. Paxton's statement.

witnesses actually testify, not just have their hearsay statements admitted into evidence.

Moreover, there was significant information to make a determination that Ms. Paxton's statement was not credible. She was in jail and facing state court charges and gave the statement to the government looking for a plea deal. Sentencing Tr., Vol. I, p. 23-24. She admitted in her statement that she did not know the persons at the apartment very well and had only met them one time prior. Id. at 25. Further, she admitted that she was intoxicated on the evening in question. Id. at 24. Also, there was no evidence presented regarding any prior reliability of Ms. Paxton in other cases.

Thus, Wells suggests that the district court erred when it relied upon the hearsay statement of Allison Paxton in making findings under the sentencing guidelines, where there was no sufficient indicia of reliability of such a statement.

> B. THE FINDINGS REGARDING DRUG WEIGHT, FIREARM POSSESSION, AND MAINTENANCE OF A PREMISES FOR DISTRIBUTION OF DRUGS WERE CLEARLY ERRONEOUS BECAUSE THEY WERE BASED ON CONSIDERATION OF IMPROPER EVIDENCE AND OTHER EVIDENCE WAS INSUFFICIENT FOR SUCH FINDINGS.

Wells suggest that the findings made by the district court regarding drug weight, firearm possession, and maintenance of a premises for distribution of drugs

were clearly erroneous because they were based on consideration of improper

evidence– information from Wells protected by U.S.S.G. § 1B1.8 and unreliable

hearsay evidence.[3]

Thus, Wells suggests that the district court should have found that the 99.6

grams of crack cocaine found at the Race Street apartment was not attributable to

him, that the firearm enhancement did not apply, that the enhancement for

maintenance of a premises for distribution of a controlled substance did not apply,

and that reductions for role in the offense and safety valve did apply.   Wells

suggests that his total offense level should have been correctly calculated at

offense level 17 and that with a criminal history category of I, his advisory

guideline range should be between 24 and 30 months imprisonment.

For drug weight to be correctly attributed to a defendant, a sentencing court

must find by a preponderance of the evidence "that the amount of [drugs] be both

reasonably foreseeable to the defendant and within the scope of the jointly

undertaken criminal activity for which the defendant is being sentenced."  United

States v. Garcia, 86 F.3d 394, 401 (5th Cir. 1996) (citing U.S.S.G. § 1B1.3).  Here,

91.6 grams of the crack cocaine that was seized from the Race Street apartment

---

[3] Wells suggests that use of 1B1.8 protected information standing alone
warrants remand but would ask this Court to remand with instructions that the
district court not consider the hearsay statement of Allison Paxton in any re-
sentencing hearing.

was found hidden in the bedroom of Timothy Williams and another 8 grams of crack cocaine was seized from the living room of the apartment. Wells suggests that there was insufficient evidence that the drugs found in Williams' bedroom or the living room were reasonably foreseeable to him and that the drugs were within the scope of any jointly undertaken criminal activity.

Wells pled guilty and was sentenced for a traffic stop that uncovered 2.17 grams of crack cocaine on his person. This traffic stop occurred on April 11, 2013. The search that uncovered the 99.6 grams of crack cocaine occurred on May 10, 2013, almost a month after the traffic stop that formed the conduct for which Wells entered a guilty plea. Thus, even if Wells was engaged in jointly undertaken criminal activity with Williams on April 11, 2013, there is no credible evidence that suggests that the crack cocaine found a month later at the residence was reasonably foreseeable to Wells.

Furthermore, even if the government presented sufficient evidence to demonstrate that Wells occasionally resided at the Race Street apartment, the vast majority of the crack cocaine was found in Williams' bedroom. There is no evidence that Wells had any dominion or control over any of the items in Williams' bedroom.

Moreover, there was evidence presented by Wells at the sentencing hearing,

33

through the testimony of Ashley Grams, the property manager of the Race Street apartment, that even though Wells signed the lease with Williams, the relationship was more in the way as being a co-signer and that Wells subsequently on multiple occasions tried to get the property manager to take his name off the lease. J.A. 135-156.

Furthermore, as evidenced by Count 7 of the Indictment, Williams' criminal behavior continued after the search of the residence on May 10, 2013. On August 8, 2013, a video-recorded controlled buy from Williams was conducted using a confidential informant. Wells was not present during the controlled buy and had absolutely no connection to such conduct.

In this case, there was an insufficient amount of evidence of jointly undertaken criminal conduct that is necessary to find that the drugs found at the Race Street apartment were attributable to Wells. There was no guilty plea entered to any conspiracy charge. There was no aiding and abetting of the charge that Wells entered a plea to. There were no controlled buy involving Wells. There were no witnesses that testified that Wells and Williams were selling crack cocaine together. There were no recorded phone calls or text messages between Wells and Williams. There were no recorded phone calls or text messages in which Wells would set up sales for Williams. There were no co-conspirator statements outlining the scope of any conspiracy. There were no admissions by Wells or any

34

co-defendant. Simply put, the evidence presented by the government was insufficient to prove that the drugs found at the apartment should have been attributed to Wells, and the district court clearly erred in making such a finding.

Similarly, Wells suggests that there was insufficient evidence to find that either the enhancement for possession of a firearm or maintenance of a premises for distribution of a controlled substance applied to him.

At sentencing, the government bears the burden to prove that a weapon was connected with a drug offense. United States v. Manigan, 592 F.3d 621 (4th Cir. 2010) (citing U.S.S.G. § 2D1.1(b)(1) and cmt. n. 11(A)). If the government meets its burden, a defendant may then persuade the court that "it was clearly improbable that the weapon was connected with his drug activities." Id. Only when the government satisfies its burden and the defendant fails to meet his or her burden of clear improbability may the weapon enhancement be applied. Id. Generally, the government must prove that the firearm was present at the site of the offense. See United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995). The government must also prove a defendant had either actual or constructive possession of the firearm. United States v. Dunlap, 209 F.3d 472, 477 (6th Cir. 2000), abrogated on other grounds.

A two-level enhancement under U.S.S.G. § 2D1.1(b)(12) is appropriate, "If

the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]" U.S.S.G. § 2D1.1(b)(12). "Among the factors the court should consider in determining whether the defendant maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1(b)(12), cmt. n. 17.

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

Id.

Similarly to the argument regarding drug weight, it was clearly erroneous for the district court to find that these enhancements applied to Wells. As stated above, the firearm was found in the bedroom of Williams. It was found on a search conducted on May 10, 2013. Wells was arrested on April 11, 2013. There was no firearm on Wells' person or in the vehicle that was found during his arrest. There is no admissible evidence to suggest that Wells had either actual possession of the firearm found at the residence or constructive possession of the firearm. There are no witnesses that ever place any firearm in Wells' possession.

Further, there was no evidence presented that Wells controlled access to or the activities at the Race Street apartment. Only Williams had a key to the apartment. There is no credible evidence that places Wells at the apartment on the night that it was searched. There is evidence that Wells tried to remove his name from the lease of the apartment and was only acting as a co-signor for Williams. Wells was arrested at a traffic stop, not at the apartment.

Thus, Wells suggests that the district court clearly erred in finding that an enhancement for possession of a firearm and maintenance of premises for distribution of a controlled substance applied to Wells.[4]

Therefore, Wells suggests that the district court clearly erred in finding that the 99.6 grams of crack cocaine was attributed to him, that the firearm enhancement was applicable and that the maintenance of premises for distribution of a controlled substance was applicable. The district court relied upon inadmissible evidence– information protected by § 1B1.8 and unreliable hearsay evidence– and the remaining evidence was insufficient to establish such findings.

---

[4] Wells would further suggest that the only provision making him ineligible for the two-level safety valve reduction, pursuant to U.S.S.G. § 2D1.1(b)(16) was the finding that he possessed a firearm. If such a finding was clearly erroneous, then Wells suggests that he is entitled to a two level reduction.

**CONCLUSION**

After a careful review of the record, and pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), counsel for Williams believes that all arguable issues have been briefed on Williams' behalf, and that there are no legally non-frivolous issues to raise in this appeal.   Further, the so-called appellate waiver provision set forth in the plea agreement appears enforceable in this case.  Counsel for Williams respectfully requests that the Court conduct an independent review of the record to determine whether any justifiable issues or prejudicial errors have been overlooked by counsel on Williams' behalf.

Further, counsel for Wells believes that an error has occurred in this case which invalidates the appellate waiver in the plea agreement filed in his case, permitting Wells to raise the issue of whether the District Court erred in relying upon information gleaned during Wells' debriefing in imposing Wells' sentence, arguing that this precise error occurred.

**REQUEST FOR ORAL ARUMENT**

Appellant Wells respectfully requests oral argument in this matter.

Respectfully submitted,

**TIMOTHY RAMEEK WILLIAMS**

AND

**DERRICK WAYNE WELLS, JR.**

BY:  /s/ Nicholas J. Compton, Esq.      /s/ Shawn McDermott, Esq.
       Attorney for Appellant Williams      Attorney for Appellant Wells
       Federal Public Defender's Office      Mills McDermott, PLLC
       651 Foxcroft Avenue, Suite 202      1800 West King Street
       Martinsburg, West Virginia 25401      Martinsburg, West Virginia 25401
       Tel. (304) 260-9421      Tel. (304) 262-9300
       Fax. (304) 260-3716      Fax. (304) 262-9310
       E-mail. Nicholas_Compton@fd.org      E-mail. smcdermott@wvacriminaldefense.com

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. _____     Caption: _____

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ ]     this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]     this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ]     this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

[ ]     this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____

## CERTIFICATE OF SERVICE OF ANDERS BRIEF ON DEFENDANT

TO:       Defendant-Appellant

_____

_____

_____

FROM:    Counsel for Defendant-Appellant

I have reviewed the record documents in your case and have carefully reviewed the law in light of the circumstances of your case. Unfortunately, I cannot find a meritorious ground to submit to the court of appeals on your behalf. Because I find no issues of merit for your direct appeal, I am filing a brief in your case pursuant to the decision of the United States Supreme Court in <u>Anders v. California</u>, 386 U.S. 738 (1967).

As required by the Supreme Court's decision in <u>Anders</u>, I have:

[    ] provided you with a copy of the <u>Anders</u> brief; **AND**

[    ] advised you that you may file a supplemental pro se brief within 30 days.

*(If defendant had an interpreter in the district court, also complete the following):*

[    ] The substance of the <u>Anders</u> brief and your right to file a supplemental pro se brief within 30 days have been interpreted for you and communicated either over the telephone or in person; **OR**

[    ] The substance of the <u>Anders</u> brief and your right to file a supplemental pro se brief within 30 days have been translated for you and communicated in writing.

If you choose to file a supplemental pro se brief, it should be sent to the following address: Clerk, U.S. Court of Appeals for the Fourth Circuit, 1100 East Main Street, Suite 501, Richmond, VA 23219-3517. Copies should also be served on counsel in the case.

_____      _____
      Signature                                   Date

# CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____            _____
     Signature                                                     Date